UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON ALLEN
o/b/o MARY ALLEN,

                Plaintiff,

v.                                                                                      5:16-CV-1207
                                                                                        (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>  Counsel for Plaintiff<br>300 S. State St., Ste. 420<br>Syracuse, NY 13202 | HOWARD OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | GRAHAM MORRISON, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 13.).

Currently before the Court, in this Social Security action filed by Jason Allen o/b/o Mary Allen ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.     RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1977. (T. 93.) She received her GED. (T. 262.) Generally, Plaintiff's alleged disability consists of anxiety, "back problems," and "head injury." (T. 93.) Her alleged disability onset date is August 1, 2011. (T. 92.)

### B.    Procedural History

On September 11, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 92.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 25, 2014, Plaintiff appeared before the ALJ, Edward J. Pitts. (T. 81-88.) On December 11, 2014, Plaintiff appeared before the ALJ, John P. Ramos. (T. 44-80.) On February 23, 2015, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 25-43.) On August 3, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 30-37.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 11, 2012. (T. 30.) Second, the ALJ found that Plaintiff had the severe impairments of history of lumbar spine surgery, history of

traumatic head injury, and asthma. (*Id.*) The ALJ determined that Plaintiff's obesity was a non-severe impairment. (*Id.*) The ALJ determined that Plaintiff's irritable bowel syndrome ("IBS"), sleep apnea, palpations, and idiopathic neuropathy were not medically determinable impairments. (T. 31.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations. (T. 33.) The ALJ found that Plaintiff could understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. (*Id.*) The ALJ found Plaintiff could related to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interactions or joint efforts with other coworkers to achieve work goals. (*Id.*) The ALJ found that Plaintiff should have no more than occasional, brief interaction with the public; she could handle reasonable levels of simple, work-related stress in that she could make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 36.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred as a matter of law in determining that her IBS, palpitations, and idiopathic neuropathy were not medically determinable impairments. (Dkt. No. 9 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence in the record. (*Id.* at 11-14.) Third, and lastly, Plaintiff argues the requirements of the jobs identified by the VE exceed the limitations set forth by the ALJ. (*Id.* at 14-15.)

### B.  Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly determined Plaintiff's severe impairments. (Dkt. No. 10 at 6-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly determined Plaintiff's RFC. (*Id.* at 8-9.) Third, and lastly, Defendant argues there were jobs in the national economy that Plaintiff could perform. (*Id.* at 11-13.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

4

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

    **B.**    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medically Determinable Impairments

Plaintiff contends that the ALJ erred in his determination that her IBS, palpitations and idiopathic neuropathy were not medically determinable impairments at step two and contends that the error resulted in an improper RFC determination. (Dkt. No. 9 at 10-15 [Pl.'s Mem. of Law].) The Commissioner maintains that the ALJ's step two determination was proper and supported by substantial evidence and the ALJ did not err in his RFC determination. (Dkt. No. 10 at 6-8, 8-11 [Def.'s Mem. of Law].)

Pursuant to the regulations, disability may be found only if a plaintiff has a medically determinable impairment. *See* 20 C.F.R. § 416.905(a)[1]. Such an impairment

---

[1] Effective March 27, 2017, 20 C.F.R. § 416.905 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

6

must "result from anatomical, physiological, or psychological abnormalities which can be show by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms." *Id.* at § 416.908.

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff's medically determinable impairments were severe impairments that significantly limited her physical or mental ability to do basic work activities, or non-severe impairments. *See* 20 C.F.R. § 416.920(c). Only medically determinable impairments may be considered severe or non-severe. *See id.* at § 416.920(a)(4)(ii). Therefore, if an impairment is not classified as a medically determinable impairment the ALJ does not need to evaluate whether the impairment is severe or not and need not consider such impairment in formulating his RFC determination. *See id.* at § 416.945(a)(2) (an ALJ will consider all severe and non-severe impairments in formulating an RFC determination).

At step two, the ALJ determined that Plaintiff's IBS, sleep apnea, palpitations, and idiopathic neuropathy were not medically determinable impairments. (T. 31.) The ALJ reasoned that Plaintiff had general complaints of such impairments, but they were not supported by treatment notes, clinical findings, and diagnostic testing. (*Id.*)

Plaintiff essentially asserts that her IBS, palpitations, and neuropathy were medically determinable impairments because the record contained diagnosis of each impairment. (Dkt. No. 9 at 10-12 [Pl.'s Mem. of Law].) Assuming that the ALJ did err in

7

his determination that these impairments were not medically determinable impairments, any error would be harmless.

At step two, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). A diagnosis may be sufficient to establish a medically determinable impairment; however, a mere diagnosis does not render a condition severe. Further, Plaintiff fails to provide any additional limitations imposed by her IBS or palpitations that would affect the ALJ's RFC determination.

Regarding Plaintiff's neuropathy, any error in classifying the condition as not medically determinable would also be harmless. Plaintiff asserts that her neuropathy limited her ability to reach. (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].) In his step four analysis, the ALJ discussed Plaintiff's ability to reach including examinations and medical opinions. (T. 34.) Therefore, any error at step two in failing to classify Plaintiff's neuropathy as a medically determinable impairment was harmless because the ALJ discussed any limitations due to that impairment at subsequent steps of the evaluation. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010) ("[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly

considered the effects of the impairment in the remainder of his analysis"); *see Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014).

Overall, any error the ALJ may have made in his determination that Plaintiff's IBS, palpitations, and idiopathic neuropathy were not medically determinable impairments was harmless. Regarding IBS and palpitations, Plaintiff failed to provide more than diagnosis of the impairments and mere diagnosis alone is not sufficient to render a condition severe. Plaintiff failed to provide any additional limitations caused by her IBS or palpitations, alone or in combination with other impairments. Regarding neuropathy, Plaintiff asserts this condition limited her ability to reach. However, the ALJ fully discussed Plaintiff's reaching ability in his step four analysis. Therefore, any error in classifying Plaintiff's IBS, palpitations, and neuropathy as not medically determinable impairments was harmless.

### B. The RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. at §§ 416.927(d), 416.945(a)(3), 416.946(c).

Plaintiff contends that the ALJ erred in his RFC determination because he failed to account for her IBS, palpitations, and neuropathy; failed to account for her visual impairment; improperly rejected the opinion of consultative examiner Christina Caldwell, Psy.D.; and failed to properly account for Plaintiff's reaching limitations. (Dkt. No. 9 at 12-15 [Pl.'s Mem. of Law].)

For the reasons stated in Part IV.A., Plaintiff failed to show that IBS and palpitations imposed any additional limitations. Further, the ALJ properly accounted for Plaintiff's ability to reach in his RFC determination. Therefore, the ALJ did not err in his RFC determination regarding limitations arising from Plaintiff's IBS, palpitations, and neuropathy.

Plaintiff argues the ALJ failed to account for her visual abnormality as diagnosed by Alisha Mansuri, M.D. and failed to acknowledge objective testing relating to her vision. (Dkt. No. 9 at 13-14 [Pl.'s Mem. of Law].) Plaintiff does not cite to any visual limitations in the record. To be sure, Plaintiff complained of blurred vision and was referred to occupational therapy. (T. 436, 479, 482, 484.) However, Plaintiff did not follow through with treatment. (T. 479.) Although medical sources noted vision complaints and referred her to therapy, no provider noted visual limitations. A primary care provider, Thomas Grady, M.D., opined that Plaintiff had no visual limitations. (T. 637.) Consultative examiner, Elke Lorensen, M.D., performed an eye exam and did not opine to any visual limitations. (T. 427, 429.) Therefore, the record did not contain any additional physical limitations due to Plaintiff's alleged visual impairment.

However, Plaintiff appears to argue that her visual limitations supported greater mental limitations. Plaintiff relies on objective testing which indicated "deficits in visuospatial task, attention, language, abstraction, and delayed recall." (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].) Plaintiff contends that such testing, together with the opinion of Dr. Caldwell, supported greater mental limitations than provided for in the RFC. (*Id.*)

Dr. Caldwell opined that based on her examination of Plaintiff, she was "limited" in her ability to follow and understand simple directions and instructions, perform simple

10

tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, or appropriately deal with stress. (T. 423-424.) The ALJ afforded Dr. Caldwell's opinion "very little weight" reasoning it was not consistent with her findings on examination, it was not consistent with Plaintiff's lack of psychiatric care, and it was not consistent with Plaintiff's ability to perform all of her activities of daily living. (T. 35.)

Plaintiff contends that not only did her visual limitations support Dr. Caldwell's opinion, the ALJ "ignored" Dr. Caldwell's observations of Plaintiff's dysphoric affect, below average IQ, fair to poor insight and judgment, and failed to consider the effect of Plaintiff's anxiety. (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].) Plaintiff's argument ultimately fails.

Here, in formulating his mental RFC determination the ALJ relied heavily on the opinion of the non-examining State agency medical consultant, R. Altmansberger. (T. 34.) Dr. Altmansberger reviewed the record on January 7, 2013. (T. 103.) Based on his review, he opined that Plaintiff had moderate limitations in her ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors.

11

(T. 101-102.)  Dr. Altmansberger opined that Plaintiff was "not significantly limited" in her ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; work in coordination with or in proximity to others without being distracted by them; make simple work related decisions; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (*Id.*)

Dr. Altmansberger indicated that he based his opinion on Dr. Caldwell's examination, notations from Upstate University Hospital for Outpatient Rehabilitations Visit, and other notations in the record.  (T. 103.)  Dr. Altmansberger ultimately stated that Plaintiff was capable of simple work on a sustained basis.  (*Id.*)

Although Plaintiff asserts that Dr. Caldwell's, and not Dr. Altmansberger's opinion, was supported by substantial evidence, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference

and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Further, Plaintiff fails to show how Dr. Caldwell's opinion was inconsistent with the ALJ's RFC determination. Dr. Caldwell merely asserts that Plaintiff was "limited" in certain areas of mental functioning. (T. 423.) Dr. Caldwell does not further define this term. However, Dr. Altmansberger reviewed Dr. Caldwell's examination and findings and provided clear functional limitations which the ALJ incorporated into his RFC determination. Therefore, the ALJ did not err in his reliance on Dr. Altmansberger's opinion in formulating his mental RFC determination.

Plaintiff alleges that the ALJ improperly rejected portions of functional assessments provided by Dr. Lorensen and Dr. Grady regarding Plaintiff's ability to reach. (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].) Dr. Lorensen opined that Plaintiff had "moderate restrictions" in reaching. (T. 429.) Dr. Grady opined Plaintiff could "occasionally" reach overhead and in all directions with both hands. (T. 636.) The ALJ did not adopt any reaching limitations in his RFC determination. He reasoned that reaching limitations were not supported by the record. (T. 34.) The ALJ noted that reaching limitations were not consistent with Plaintiff's lack of treatment for her back, her statements that she did not have a physical disability, her ability to exercise, and her ability to perform activities of daily living. (*Id.*)

Plaintiff asserts reaching limitations were supported by observations that she had reduced sensation in her left arm. (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].) However, although Plaintiff asserts that observations of decreased sensation in her upper left

13

extremity support the doctor's reaching limitations, substantial evidence ultimately supported the ALJ's determination.

The ALJ thoroughly discussed the medical evidence in the record pertaining to Plaintiff's ability to reach. (T. 34.) The ALJ concluded that Plaintiff did not have greater limitations in reaching, as opined by Dr. Grady and Dr. Lorensen, because such limitations were not supported by objective medical observations of full strength in Plaintiff's upper extremities, no muscle atrophy, and full grip strength. (*Id.*)

Indeed, Dr. Lorensen noted decreased sensation to touch in Plaintiff's left upper extremity; however, on examination Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists. (T. 428.) Plaintiff informed Dr. Lorensen that she did "very light" cleaning, shopped with help, and was independent with personal hygiene and dressing. (T. 427.) Claudine Ward, M.D., treated Plaintiff for her head injury. Dr. Ward noted in May of 2012, that Plaintiff was independent with her activities of daily living and on examination Plaintiff had intact sensation to light touch bilaterally in her upper extremities, full strength in her elbows, and full grip strength. (T. 436.) In October of 2012, Dr. Ward noted Plaintiff had decreased sensation to light touch; however, Plaintiff had full strength in her right upper extremity, "giveaway strength" at the left elbow, and full grip strength. (T. 432.) Multiple notations from a provider indicated that Plaintiff had no physical disability and her activities of daily living were normal. (T. 449, 456, 464, 466.) In May of 2014 a provider noted decreased sensation "on left" and 3/5 motor strength in Plaintiff's left upper extremity and full motor strength in her right upper extremity. (T. 489.) Overall, despite medical opinion evidence and notations of decreased sensation in her left upper extremity, substantial evidence

14

supported the ALJ's reaching determination.  The ALJ discussed the medical evidence regarding Plaintiff's ability to reach and ultimately concluded that based on objective medical observation of full motor strength and reports of activities of daily living, Plaintiff was capable of frequently reaching.  *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (A reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence.")

### C. The ALJ's Step Five Determination

Plaintiff argues that the vocational expert ("VE") testimony provided during the hearing was flawed because the VE relied on information from the Dictionary of Occupational Titles ("DOT") instead of from O*NET[2].  (Dkt. No. 9 at 15-16 [Pl.'s Mem. of Law].)

At step five the ALJ determined that given Plaintiff's age, education, work experience, and RFC there were a significant number of jobs in the national economy she could perform.  (T. 36.)  In making his determination the ALJ relied on VE testimony that given Plaintiff's vocational factors, she could perform the occupations of document preparer (DOT # 249.587-018) and polisher (DOT # 713.684-038).  (*Id.*)

Plaintiff's argument that the DOT is outdated and not an accurate representation of occupations in today's world, is interesting but must fail.  Under the Regulations, an ALJ can take administrative notice of job data from "various governmental and other publications" including the DOT.  20 C.F.R. § 416.966(d)(1); *see also* SSR 00-4p ("In making disability determinations, we rely primarily on the DOT [including its companion

---

[2]     O*NET is another source of occupational information. https://www.onetcenter.org/overview.html

15

publication, the SCO] for information about the requirements of work in the national economy.").

If the ALJ does use a VE, as in this case, he presents the VE with a set of hypothetical facts to determine whether plaintiff retains the capacity to perform any specific job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the VE is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x. 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277. For the reasons stated herein, the ALJ's RFC determination was supported by substantial evidence and reflected in his hypothetical to the VE. (T. 75-77.)

In addition, SSR 00-4p provides that a VE's testimony should generally be consistent with the occupational information contained in the DOT, and when there is an "apparent" unresolved conflict, the ALJ must obtain a " 'reasonable explanation for the conflict before relying on the [vocational expert's testimony].' " *See Murray v. Colvin*, No. 15-CV-6384, 2016 WL 5335545, at *13 (W.D.N.Y. Sept. 23, 2016) (quoting SSR 00-04p (alteration in original)).

Although there may be a more updated and comprehensive source for identifying occupations, under the Regulations ALJ's may rely on information taken from the DOT. The ALJ may also rely on VE testimony in which the VE presents data from the DOT. Therefore, the ALJ did not err in relying on VE testimony that an individual with Plaintiff's vocational factors could perform occupations as defined in the DOT because

under the Regulations ALJ's can take administrative notice of job data provided in the DOT and rely on VE testimony based on the information provided in the DOT.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

    **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     December 4, 2017

                                                        William B. Mitchell Carter
                                                       U.S. Magistrate Judge